05-5414-ag
Dedji v. Mukasey

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: February 25, 2008                                    Decided: May 8, 2008)

Docket No. 05-5414-ag

KOFFI SOGNIDE DEDJI,

     *Petitioner*,

     v.

MICHAEL B. MUKASEY, United States Attorney General,[*]

     *Respondent.*

Before: CABRANES, POOLER, and SACK *Circuit Judges.*

Petitioner seeks review of an order of the Board of Immigration Appeals affirming the decision of an Immigration Judge ("IJ") denying petitioner's applications for asylum, withholding of removal, relief under the Convention Against Torture, and voluntary departure. Petitioner contends that the IJ erred in (1) concluding that he lacked discretion to accept documents filed after a deadline prescribed by the relevant local rules and (2) determining, partly based on an absence of corroborating evidence, that petitioner lacked credibility. We conclude that an IJ has broad discretion, in the management of his docket, to enforce deadlines established by local rules, and to deviate from the local rules where (1) petitioner has demonstrated good cause for the delay and (2) substantial prejudice would likely result from the enforcement of the deadline. We further conclude that abuse of discretion is the proper standard to apply in reviewing an IJ's decision to establish and enforce filing deadlines for submission of documents.

Petition granted.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto Gonzales as respondent in this case.

WILLIAM H. BERGER, Berger & Berger, Buffalo, NY, *for Petitioner.*

GAIL Y. MITCHELL, Assistant United States Attorney (Terrance P. Flynn, United States Attorney, *of Counsel*), Office of the United States Attorney for the Western District of New York, Buffalo, NY, *for Respondent.*

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioner Koffi Sognide Dedji, a native and citizen of the People's Republic of Togo, requests review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion the decision of the immigration judge ("IJ"). *In re Dedji*, A95 418 869 (B.I.A. Sept. 12, 2005), *aff'g* A95 418 869 (Imm. Ct. Buffalo May 13, 2005). Dedji concedes that he is removable but contends that he is eligible for asylum, pursuant to 8 U.S.C. §§ 1101(a)(42) (defining "refugee") and 1158(b) (giving Attorney General discretion to grant certain refugees asylum); withholding of removal, pursuant to 8 U.S.C. § 1231(b); relief under the Convention Against Torture ("CAT"), Dec. 10, 1984, 1465 U.N.T.S. 85; *see* 8 C.F.R. § 208.18; or alternatively, voluntary departure. He maintains that the IJ erred in finding that he was not credible and declining to consider, on grounds of timeliness, the additional documentation Dedji submitted in support of his claims. We conclude that an IJ's broad discretion to adopt and enforce deadlines includes the authority to deviate from the deadlines set out in the local rules where a petitioner has demonstrated good cause for the delay and substantial prejudice would likely result from the enforcement of the deadlines.

## BACKGROUND

Dedji entered the United States on October 20, 2001 on a non-immigrant visa and was authorized to stay in the United States for three months. On May 9, 2002, the Immigration and Naturalization Service served Dedji with a Notice to Appear that charged him with being subject to

removal pursuant to 8 U.S.C. § 1227(a)(1)(B)[1] for having remained in the United States beyond the expiration of the three-month period.

**A.**

Dedji's claims for relief are based on his allegations that he was persecuted by the Government of Togo on the basis of his political beliefs and activities. In his testimony before the IJ, he described the following relevant events.

In 1990, while he was still in high school, he was arrested, detained, and beaten after participating in a student protest against the government. Dedji claims that he was released only after promising not to participate in any further protests. He alleges that, as a result of the beatings, he suffered permanent damage to his eyes as well as ongoing headaches.

In 1997, while he was in law school, he was detained and severely mistreated based on his participation in meetings and demonstrations organized by the Union for the Force of Change ("UFC"), an opposition political party. After his release, he was treated for headaches and other injuries. Dedji further testified that shortly after his arrest one of the other students with whom he was arrested was found dead. In response to this news, he contends, he left Togo to stay in Ghana for two months, and thereafter returned to Togo to finish his studies at law school. He maintains that after he graduated from law school he was offered a job with the government but turned it down as a matter of principle.

---

[1] That provision reads in pertinent part:

> Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
>
> > Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable.

8 U.S.C. § 1227(a)(1)(B).

Dedji obtained employment with a private company involved in radio and telecommunications, in connection with which he obtained a temporary visa to enter the United States. He claims that in September 2001, before he left Togo, he made a speech on his company's radio station that included negative comments about the government's failure to adequately fund youth sports. He asserts that the Minister of Communications gave a "threatening" speech in response and that employees of the radio station were arrested a few days later. After the arrests of the radio station employees, he maintains, he narrowly escaped arrest.

After this incident, Dedji asserts, he went to Ghana and returned to Togo after a few weeks in order to prepare for his business trip to the United States. He claims that, while he was in Ghana, his house was ransacked, and "officers and military people" hit his wife and kidnapped his ten-month-old son. He arrived in the United States on October 20, 2001. He also alleges that since he arrived in the United States his family in Togo has been continually harassed. For instance, he alleges that his father was arrested because of Dedji's own work with an organization called Transparency International. According to Dedji, his father was told that Togo officials intended to issue an international warrant for Dedji's arrest because of Dedji's activities with Transparency International.

**B.**

In advance of a May 13, 2005 hearing before the IJ, Dedji submitted various documents in support of his application for relief. The documents included a purported notice of judicial inquiry into Dedji's activities; a copy of an arrest warrant; a letter from the UFC attesting to Dedji's involvement in the party; Dedji's registration as a representative of the UFC; copies of purported doctors' reports specifically mentioning that he had been shot, as well as imprisoned, and prescribing hospitalization; letters from his wife and his father recounting visits they received from the authorities regarding Dedji's whereabouts; a copy of his law diploma; an attestation of his

-4-

employment signed by the General Director of his company; and various country reports on Togo. The documents were accompanied by a letter from Dedji's counsel acknowledging that, under the applicable local rules, the submissions were almost one week late.[2] The letter explained that Dedji had timely provided the documents to counsel and that the delay in submitting the documents was attributable to a fire in the attorney's office.

At the hearing, Dedji testified in support of his claims. In the course of his testimony, Dedji's counsel moved to admit the documents. The IJ acknowledged receiving the documents but refused to admit them on the basis that the submissions were untimely under the local rules, relying on *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) (observing, *inter alia*, that "[t]he boundaries of the Local Rules are drawn by federal statutory and constitutional law, not by whether the Local Rules impact on the claims and rights of the litigants").

At the conclusion of the hearing, the IJ determined that Dedji had not provided evidence of any events that rose to the level of persecution. The IJ concluded that Dedji had not established that he had a well-founded fear of persecution because he had never attempted to leave Togo, or left only briefly, despite the many incidents of alleged persecution he recited. In addition, while not directly discounting Dedji's account as not credible, the IJ expressed skepticism that Dedji could be a target of the Government while being permitted to complete his legal education at a public law school, offered a government job, and later given a visa for travel outside the country. The IJ also

---

[2] The local immigration court rules provide in relevant part as follows:

> Except for asylum applications, which must be filed in open court, in addition to complying with 8 C.F.R. §§ 1003.31 and 1003.32, all proposed exhibits, applications and briefs must be filed with the Immigration Court no later than fifteen (15) days prior to the scheduled *Individual Calendar* hearing, unless otherwise authorized or directed by the Immigration Judge. The Immigration Court may refuse to accept late-filed documents by any party.

Local Operating Procedures, United States Immigration Court, Buffalo & Batavia, New York, Procedure 5(c) ("local rules"). Because the hearing was scheduled for May 13, 2004, documents should have been filed no later than April 28, 2004. Dedji's documents were submitted almost one week late, on May 5, 2004. Dedji submitted an additional document on May 12, 2004, one day before the scheduled hearing.

found that Dedji was not credible based on several omissions from his asylum application, including his alleged arrests, visits to the doctor after his time in the camps, and the forced entry by the officials who ransacked his home. Finally, the IJ noted that Dedji had failed to provide corroborating evidence for his claims that (1) one of his fellow students was found dead shortly after the 1997 incident and (2) Dedji's father had been arrested because of Dedji's political activities. On that basis, the IJ denied Dedji's applications for asylum, withholding of removal, relief under CAT, and voluntary departure.

Dedji appealed to the BIA, alleging that the IJ erred in (1) failing to recognize that he had discretion to accept the late-filed documents and (2) finding that Dedji was not credible. The BIA affirmed the IJ's decision without opinion on September 12, 2005. Dedji renews these claims on appeal.

## DISCUSSION

An IJ's authority to reject untimely filed documents is an issue of first impression in our Circuit. We now write to recognize that an IJ has broad discretion to set and extend filing deadlines pursuant to 8 C.F.R. § 1003.31.[3] We hold, however, that, in the particular circumstances presented here, the IJ had the discretion to deviate from the filing deadlines in the local rules; and that his failure to recognize that he possessed this discretion was error.

---

[3] That regulation provides in relevant part:

> (a) All documents and applications that are to be considered in a proceeding before an Immigration Judge must be filed with the Immigration Court having administrative control over the Record of Proceeding.
>
> . . .
>
> (c) The Immigration Judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any. If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived.

8 C.F.R. § 1003.31

A.      Standard of Review

Where the BIA affirms the IJ's decision without comment, we review the IJ's decision as the final agency determination. *See, e.g.*, *Wengsheng Yan v. Mukasey*, 509 F.3d 63, 66 (2d Cir. 2007).  We review the IJ's factual findings, including adverse credibility determinations, for substantial evidence, and will not disturb them "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see Shu Wen Sun v. BIA*, 510 F.3d 377, 379 (2d Cir. 2007).

An IJ has discretion to set deadlines for the submission of documents.  8 C.F.R. § 1003.31(c) ("The Immigration Judge may set and extend time limits for the filing of applications and related documents . . . .").  When a document has been deemed untimely filed, the "opportunity to file that . . . document shall be deemed waived." *Id.*  In evaluating an IJ's decision to grant or deny a continuance pursuant to a similar regulation, 8 C.F.R. § 1003.29 (stating that an IJ "may grant a motion for continuance for good cause shown"), we have held that such a decision is reviewed for abuse of discretion.  *See Sanusi v. Gonzales*, 445 F.3d 193, 198 (2d Cir. 2006) (reviewing a denial of a continuance).  Similarly, we review an IJ's decision to deny a motion to reopen for abuse of discretion. *Jie Chen v. Gonzales*, 436 F.3d 76, 77 (2d Cir. 2006) (reviewing a denial of a motion to reopen).

We now conclude that abuse of discretion is the proper standard to apply in reviewing an IJ's decision to establish and enforce filing deadlines for submission of documents.  An IJ's decision constitutes error or an "abuse of discretion" when "(1) his decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2) his decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Morgan v. Gonzales*, 445 F.3d 549, 551-52 (2d Cir. 2006) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

B.    The IJ's Decision to Not Admit the Untimely-Filed Documents

We have repeatedly observed that "IJs are accorded wide latitude in calendar management, and we will not micromanage their scheduling decisions any more than when we review such decisions by district judges." *Morgan*, 445 F.3d at 551; *see also Sanusi*, 445 F.3d at 199 (same). An IJ's discretion in setting and enforcing deadlines, like that of a district judge, is circumscribed by the relevant local rules. *See Somlyo*, 932 F.2d at 1044. However, both the IJ and district judge have the "inherent discretion to depart from the letter of the Local Rules" in certain circumstances where "fairness demands that noncompliance be excused." *Id.* at 1048. *See also United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000) ("[A] district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment."); *United States v. Diaz-Villafane*, 874 F.2d 43, 46 (1st Cir. 1989) ("[A] district court should be accorded considerable latitude in applying local procedural rules of its own making, and in departing from them."). This discretion includes the inherent power to disregard the deadlines imposed by the local rules of an immigration court, taking into consideration a removable alien's right to a "reasonable opportunity to examine the evidence against [him] [and] to present evidence on [his] own behalf." 8 U.S.C. § 1229a(b)(4)(B).

As the Seventh Circuit has noted, it is a matter of concern when an IJ's strict adherence to the established time limit prevents a petitioner from presenting his case. *See Galicia v. Gonzales*, 422 F.3d 529, 539 (7th Cir. 2005) (describing as "troubling" "the strict time limit that the IJ imposed on [petitioner], which in turn prevented her from presenting the readily available testimony of [two corroborating witnesses]"). Accordingly, where an alien has demonstrated good cause for the failure to timely file documents and a likelihood of substantial prejudice from enforcement of the deadline, an IJ may, in the exercise of his informed discretion, depart from the deadline imposed by the relevant local rules.

In the instant case, the Local Rules of the Immigration Court, issued pursuant 8 C.F.R. § 1003.31(c), do not explicitly identify a good-cause exception to the filing deadline. *See* note 3, *ante* (text of local rule). Relying on the relevant local rule and the need for enforcement of the local rule, the IJ concluded that the documents were untimely and, accordingly, refused to admit the documents. The IJ failed to consider whether, in the particular circumstances presented, a departure from the local rule was warranted.

A review of the record indicates that Dedji has made out a colorable claim that (1) he had good cause for the delay in filing the documents and (2) substantial prejudice is likely to result if the documents are not admitted. First, his counsel submitted a letter indicating that the failure to timely submit the documents was the result of a fire at her office and that Dedji had submitted the documents to his counsel in a timely manner. The Government did not challenge this account of the cause for the delay. Second, the documents that were not admitted, which included a purported arrest warrant, asserted doctors' reports, and letters from his family, arguably could have corroborated the aspects of Dedji's testimony that the IJ declined to credit—specifically, Dedji's contentions that he was personally sought by the police for his political activity; that he had been injured and received medical attention following periods of detention for his activities in opposition to the government; and that authorities were still seeking to arrest him. The failure to corroborate these contentions served, at least in part, as the basis for the IJ's adverse credibility determination and the resulting denial of relief. The proffered documentary evidence provides an unusually detailed record of Dedji's political involvement and interaction with the Government of Togo. If the excluded evidence had been admitted into the record before the IJ and considered by him, it is possible that the various inconsistencies identified by the IJ could have been resolved in Dedji's favor. In sum, we believe that Dedji's colorable claims of good cause and the possibility of substantial prejudice deserve consideration by the trier of fact.

## CONCLUSION

We **GRANT** the petition for review and **REMAND** the cause to the BIA for a determination of whether (1) good cause existed for the delay in filing the documents at issue, (2) strict adherence to the local rules would cause unfairness in this particular instance and (3) a reprieve from the filing deadline set forth in the local rules is therefore warranted. In granting this petition for review on these grounds we intimate no view on what decision would be appropriate upon reconsideration of the full record before the IJ.