**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2222
_____

CARLOS TURCIOS-OCAMPO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96 047 136)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2010

Before: AMBRO, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  May 26, 2010)
_____

OPINION
_____

PER CURIAM

Carlos Turcios-Ocampo petitions for review of a Board of Immigration Appeals

("BIA") decision dismissing his appeal of an Immigration Judge's ("IJ") decision denying

his applications for relief from removal. We will deny the petition for review.

Turcios-Ocampo is a native and citizen of Honduras who has lived in the United States since 1988. In 2006, when Turcios-Ocampo was returning to the United States from Mexico, immigration officers interviewed him due to concerns with his documentation. Immigration proceedings were initiated and Turcios-Ocampo conceded that he is subject to removal because he did not have a valid entry document at the time he applied for admission to the United States.[1] Turcios-Ocampo applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), asserting a fear of persecution on account of his political opinion. Turcios-Ocampo also prepared an application for cancellation of removal, which the IJ found untimely and pretermitted.

Turcios-Ocampo testified that in 1986, while attending college in Honduras, he visited the United States several times to do translation work for United States officials. Turcios-Ocampo also joined a right-wing democratic group, the Frente Unido Universitario Democratico ("FUUD"), which opposed the leftist group, Frente de Reforma Universitaria ("FRU"). At this time, Turcios-Ocampo also worked at a hotel. He met a hotel guest named Mr. Lamb, who Turcios-Ocampo believed was promoting

---

[1] Turcios-Ocampo was also charged with being subject to removal because he sought or had sought to procure a visa, other documentation, or admission into the United States by fraud or by willfully misrepresenting a material fact. Turcios-Ocampo did not concede that he is removable on this basis.

democracy in the region. Lamb hired Turcios-Ocampo to translate communications.

Turcios-Ocampo testified that he is afraid to return to Honduras now because of the rise of powerful drug lords and gang members, who were FRU members and maintain their political views. Turcios-Ocampo explained that in 1996 he returned to his home town and members of a family named Nunez, who opposed the FUUD, threatened him and told him to return to the United States. Turcios-Ocampo stated that Nunez family members threatened the lives of his family members and stoned his uncle's house in Honduras. Turcios-Ocampo left the country immediately after receiving these threats.

Turcios-Ocampo believes that he was threatened because of his translation work in the 1980's. He explained that he was a friend of Jorge Nunez, who told his relatives about his work. Turcios-Ocampo stated that since 1996 the threats have continued against other family members in Honduras and that the most recent threat was in 2005 when young males tore down a fence his uncle was building on his property. He also stated that he knew someone who worked for the United States government who was killed when he returned to Honduras in 2005. Turcios-Ocampo does not believe that he would be safe in any part of Honduras because the drug dealers have connections all over the country. On cross-examination, Turcios-Ocampo conceded that, despite the threats made against him in 1996, he had returned to Honduras approximately ten times, although he did not return to his home town. Turcios-Ocampo also conceded that he did not apply for asylum after the 1996 or 2005 threats.

3

The IJ concluded that Turcios-Ocampo had not met his burden of proof for asylum or withholding of removal. The IJ explained that Turcios-Ocampo had not submitted any evidence corroborating his testimony. The IJ also stated that any verbal threats did not rise to the level of persecution and that his numerous visits to Honduras belied his claim that the entire country is dangerous to him. The IJ also questioned whether the Nunez family would still want to harm Turcios-Ocampo. The IJ further found no proof that the Nunez family is a group that the government is unable or unwilling to control.[2]

On appeal, the BIA held that the IJ did not err in finding that Turcios-Ocampo failed to meet his burden of proof for asylum and withholding of removal. The BIA agreed with the IJ that the threats and stoning of his uncle's house did not rise to the level of persecution. The BIA also noted that Turcios-Ocampo did not report any incidents of harm to authorities and that the IJ had found that he did not show that the harm he suffered was inflicted by forces that the government was unable or unwilling to control. The BIA also stated that Turcios-Ocampo did not show that he was unable to relocate to another part of Honduras, noting that he had returned to Honduras without suffering any harm. The BIA further held that the IJ did not err in noting Turcios-Ocampo's failure to submit corroborative evidence.

Turcios-Ocampo also unsuccessfully challenged on appeal the IJ's decision to pretermit his application for cancellation for removal. Noting that the regulations allow a

---

[2]The IJ also denied Turcios-Ocampo's CAT application. This ruling is not at issue.

4

judge to set time limits for the filing of applications and related documents, the BIA explained that the IJ told the parties at a hearing on January 25, 2007, that all applications had to be filed ten days before the September 18, 2007, merits hearing, but Turcios-Ocampo presented his cancellation application and supporting documentation at the merits hearing. The BIA also rejected Turcios-Ocampo's related due process claim. This petition for review followed.

Turcios-Ocampo argues that the BIA erred in affirming the IJ's decision to pretermit his cancellation of removal application. Turcios-Ocampo asserts that he appeared at the January 25, 2007, hearing with his application, but the IJ did not stamp the application into evidence because he had yet to pay the filing fee. Turcios-Ocampo states that he paid the fee more than a month before his September 18, 2007, hearing date, but the fee receipt was not received until after the hearing. Because he had not received the receipt and was thus unable to get the necessary fingerprints, Turcios-Ocampo states that on September 12, 2007, he sought an adjournment of his upcoming hearing, but the IJ denied his motion. Turcios-Ocampo recognizes that the IJ also found that he had not timely filed his supporting documents, but argues that the regulations do not state that a failure to file documents or obtain a fee receipt will result in the waiver of an otherwise timely application. Turcios-Ocampo contends that the IJ's refusal to entertain his application violated his right to due process.

The administrative record reflects that Turcios-Ocampo's counsel stated he did not

5

have his applications for relief ready at a hearing held on July 13, 2006. The IJ told counsel to bring them to the next hearing or they would be considered abandoned. The IJ stated that fingerprinting had to be done and the fee had to be paid.[3] The next hearing was held six months later on January 25, 2007. Counsel stated that he had a "bare-bones" cancellation application, but he did not have the supporting documents or fee receipt. The IJ advised Turcios-Ocampo that he would enforce the court's ten-day rule, requiring that all submissions be made at least ten days before the hearing.

On the day of the merits hearing on September 18, 2007, Turcios-Ocampo's lawyer told the IJ that, as a result of an error in his office, he had just sent in the application fee and fingerprinting fee. Counsel brought to the hearing the cancellation application and supporting documents, which the IJ stated he would not consider because he had not complied with the ten-day rule. The IJ asked counsel why he was providing the application on the day of the hearing and counsel replied, "... I thought it was filed. I thought everything was done." A.R. at 81.

Based on these facts, the BIA did not abuse its discretion in concluding that the IJ did not err in pretermitting the cancellation application. See 8 C.F.R. § 1003.31(c) (authorizing the Immigration Judge to set time limits for the filing of applications and related documents and to deem waived the opportunity to file an application or document

---

[3]Under 8 C.F.R. § 1003.31(b), an application requiring the payment of a fee must be accompanied by a fee receipt from the Department of Homeland Security or by an application for a waiver of fees when filed in the Immigration Court.

not filed within the time set); see also Dedji v. Mukasey, 525 F.3d 187, 191 (2d Cir. 2008) (reviewing application of 8 C.F.R. § 1003.31(c) for abuse of discretion); Khan v. Att'y Gen., 448 F.3d 226, 233 (3d Cir. 2006) (denial of a continuance reviewed for abuse of discretion is not disturbed unless it is "arbitrary, irrational, or contrary to law"). Although Turcios-Ocampo states that he timely filed his cancellation application but not his supporting documents, the record does not reflect that Turcios-Ocampo complied with the court's ten-day rule. We also agree with the Government that Turcios-Ocampo does not have a cognizable due process claim because he has no constitutionally protected interest in the discretionary relief of cancellation of removal. See, e.g, Pinos-Gonzalez v. Mukasey, 519 F.3d 436, 441 (8th Cir. 2008) (holding same); see also United States v. Torres, 383 F.3d 92, 104-05 (3d Cir. 2004) (holding aliens do not have a due process interest in being considered for discretionary relief); Pinho v. I.N.S., 249 F.3d 183, 189 (3d Cir. 2001) (holding change in eligibility criteria for suspension of deportation, a discretionary form of relief, did not implicate due process rights).

Turcios-Ocampo also challenges the denial of his applications for asylum and withholding of removal. We review the agency's findings under a substantial evidence standard, which requires that we uphold the agency's findings unless the evidence compels a contrary conclusion. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). Turcios-Ocampo contends that he established that the threats to himself and his family constituted past persecution and that the Government did not rebut the presumption of

7

future persecution. The BIA, however, concluded that the verbal threats against Turcios-Ocampo and his family and the stoning of his uncle's house did not rise to the level of persecution. See Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993) (stating persecution requires threats to life so severe that they constitute a threat to life or freedom). Turcios-Ocampo points to no evidence compelling a contrary conclusion. Because Turcios-Ocampo did not establish past persecution, a presumption of future persecution does not apply.

Turcios-Ocampo also challenges the IJ's characterization of his claim as "stale" because he testified to events that occurred more than twenty years ago. The BIA, however, did not mention staleness as a reason for concluding that Turcios-Ocampo failed to meet his burden of proof. Where, as here, the BIA offered its own analysis and did not adopt all of the IJ's findings, we review the BIA's decision, not the decision of the IJ. Voci v. Gonzales, 409 F.3d 607, 612 (3d Cir. 2005).

Finally, Turcios-Ocampo disputes that he can move to a part of Honduras outside his home town. He contends that, although he has visited Honduras, these business trips were only for one or two weeks at a time. He argues that Honduras is a small country and that he would be discovered if he remained for a long time. Turcios-Ocampo has not shown that the evidence compels the conclusion that he cannot move to another part of Honduras. We agree with the Government that his numerous trips to Honduras run

8

counter to a claim of a well-founded fear of persecution.[4]

Accordingly, we will deny the petition for review.

---

[4]The BIA erred in citing 8 C.F.R. § 1208.16(b)(1)(B) to support the conclusion that Turcios-Campos failed to show that he could not relocate to another part of Honduras. This subsection applies where an alien has established past persecution. The BIA may have intended to cite § 1208.16(b)(2), which applies to future threats of persecution. In any event, the BIA's recognition of the fact that Turcios-Campos had returned to Honduras supports its conclusion that he did not establish a well-founded fear of persecution.