**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| JI YIN CHEN,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>Respondent. | No. 07-73409<br><br>Agency No. A097-333-874<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 11, 2010
San Francisco, California

Before: REINHARDT, W. FLETCHER and N.R. SMITH, Circuit Judges.

Ji Yin Chen, a native and citizen of China, petitions for review of the Board

of Immigration Appeals' ("BIA") published decision, dismissing his appeal from

an immigration judge's ("IJ") denial of his applications for asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT"). *See In re*

*J-Y-C*, 24 I & N Dec. 260 (BIA 2007). The BIA denied relief on the basis of an

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

adverse credibility finding. The provisions of the REAL ID Act govern our review. *See* REAL ID Act § 101(h)(2), Pub. L. No. 109-13, 119 Stat. 231, 305 (2005) (stating that the amendments are applicable to asylum applications filed on or after the date of enactment). We must uphold an adverse credibility finding so long as it is supported by substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). We deny in part and dismiss in part the petition for review.

The BIA reviewed the IJ's adverse credibility finding for clear error, but did not adopt the IJ's decision as its own and instead identified nine specific reasons cited by the IJ. We therefore review only the reasons explicitly identified by the BIA, as well as the reasoning articulated in the IJ's decision in support of those stated reasons. *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008). Even if some reasons identified by the BIA are unsupported, we must uphold an adverse-credibility finding "so long as one of the identified grounds is supported by substantial evidence." *Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir.2004) (internal quotation marks and citation omitted).

The BIA's adverse credibility finding is supported by substantial evidence. The BIA assessed the "totality of the circumstances," including factors that are explicitly permitted by the REAL ID Act. *See* 8 U.S.C § 1158(b)(1)(B). The most significant reasons cited by the BIA are (1) the contradiction between Chen's

2

testimony and that of his sister regarding the date and length of Chen's detention and (2) the contradiction in Chen's testimony regarding whether he went directly home after being released. These inconsistencies are not mere trivialities. *See Shrestha*, 590 F.3d at 1043-44 (noting trivial inconsistencies such as a typographical error or a misspelling). The evidence in this record does not compel a different result. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). In the absence of credible testimony, Chen failed to demonstrate eligibility for asylum or withholding of removal. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003).

Because Chen's CAT claim is based on the same testimony found to be not credible, and he points to no other evidence the IJ should have considered, substantial evidence also supports the denial of CAT relief. *See id.* at 1156-57.

We lack jurisdiction over Chen's claim that the IJ and BIA gave insufficient consideration to the Country Conditions Report because Chen did not raise this claim before the BIA and thereby failed to exhaust his administrative remedies. *See Barron v. Ashcroft,* 358 F.3d 674, 678 (9th Cir. 2004).

**PETITION FOR REVIEW DENIED IN PART; DISMISSED IN PART.**

3

*Chen v. Holder*, No. 07-73409

REINHARDT, Circuit Judge, dissenting:

I dissent.  I would hold that the inconsistencies that the majority concludes

provide the "most significant" support for the BIA's adverse credibility finding

are, to the contrary, entirely insignificant.  In fact, they are in most respects non-

existent.  In the remaining respects, they are trivial.  As such, even under the REAL

ID Act, they cannot support an adverse credibility determination.  *See Shrestha v.*

*Holder*, 590 F.3d 1034, 1043-44 (9th Cir. 2010).  Moreover, the other reasons on

which the BIA based its adverse credibility finding are also fatally flawed.

Accordingly, I would grant the petition.[1]

The record reveals no contradiction between Chen's and Chen's sister's

---

[1]I would also hold that we have jurisdiction to determine whether the BIA
and IJ properly considered the country conditions reports.  Our case law is clear
that a petitioner "need not . . . raise the *precise* argument below" in order to
exhaust his claims.  *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008).
Rather, the exhaustion requirement is satisfied when the petitioner "specif[ies]
which issues form the basis of the appeal."  *Id.*  (quoting *Zara v. Ashcroft*, 383 F.3d
927, 930 (9th Cir. 2004)).   In this case, Chen raised before the BIA both the issue
whether he met his burden of establishing eligibility for asylum *and* the precise
argument that the IJ had failed to sufficiently consider the country reports in
evidence.  **AR 14-15.**  Accordingly, he more than satisfied our exhaustion
requirement.  Although I am therefore certain that we do have jurisdiction to
determine whether the BIA and IJ properly considered the country conditions
reports, I do not think it necessary to reach that question in order to decide the case,
and do not do so here.

testimony regarding the duration of his detention. Chen testified that he was detained for 48 hours; his sister testified that he was detained for "one day, 20 hours." **AR 159; AR 250.** "One day, 20 hours" might, to an observer determined to search for ambiguity, appear at first glance to be ambiguous. To such an observer, the phrase might mean "one day *or* 20 hours." However, to an objective observer who read the entire record it would mean, undisputably, "one day *and* 20 hours." Such a reading renders Chen's sisters testimony consistent, rather than inconsistent, with that which was given by her brother. Neither the BIA nor the IJ offered any explanation for choosing the inconsistent version. **AR 5; AR 41-42.** Without any reasoned basis for choosing between the two readings, the IJ's and BIA's choice is based on nothing more than rank speculation, and a disregard of the record as a whole, if not a desire to create inconsistency to the detriment of the asylum applicant. As such, it cannot support an adverse credibility determination.

Similarly, the record shows no inconsistency in Chen's testimony as to whether he went directly home after being released. Chen stated several times that, after his release, he went home and saw his sister. **AR 256, 159, 229.** He never said that he went *directly* home. *Id.* When the IJ questioned him more specifically about when exactly he saw his sister, he stated that he saw her "two or three days" after his release. **AR 257.** There is no contradiction between his initial testimony

that he went home after his release and his later testimony that he went home two or three days after his release. His later testimony is simply more specific. Moreover, it is consistent with his sister's testimony that she saw him a few days after he was released from detention. **AR 252.** Because Chen made the statement that he saw his sister two or three days after his release before he had any knowledge of his sister's testimony, the IJ's conclusion that he was simply "tr[ying] to reconcile his own testimony with his sister's testimony" is unfounded. **AR 42; AR 256.**

Finally, the majority relies on the fact that Chen testified that he was arrested on January 1, 2005, while his sister testified that she saw him on January 1, 2005 after he had been released. This is a discrepancy. However, it is trivial. There is no reason why Chen's sister should have remembered the exact date on which she first saw her brother after he was released from detention one and a half years before. "[A]nalysis on review . . . should recognize that the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness's case." *Shrestha,* 590 F.3d at 1044-45.

The remaining reasons relied on by the BIA are similarly without merit. First, there were no inconsistencies between Chen's and his sister's testimony regarding the April 10, 2005 dinner. ***Compare* AR 163-65 *with* AR 245-47.**

Second, Chen provided an explanation for his apparently inconsistent statements regarding whether the passport that he used to fly from Japan to the United States was green or grayish-black, and whether it contained his name. **AR 218-19.** To the extent that the record does not compel the conclusion that his explanation was satisfactory, this discrepancy still does not support an adverse credibility finding, because it is manifestly trivial. *Shrestha*, 590 F.3d at 1043-44. Chen's inconsistency regarding whether he attended two or three home church meetings was similarly trivial. Moreover, he was never given an opportunity to explain it; accordingly, it cannot support an adverse credibility determination. *See Shrestha,* 590 F.3d at 1044; *Ordonez v. INS*, 345 F.3d 777 (9th Cir. 2003). Finally, the IJ's findings regarding Chen's demeanor are not supported by the record. *See Jibril v. Gonzales*, 423 F.3d 1129 (9th Cir. 2005). In fact, the record directly contradicts the IJ's finding that Chen became so agitated when responding to questioning about the color of his passport that the IJ had to ask him to "stop repeatedly explaining himself and to listen to the questions." **AR 47; AR 216-20.**

The BIA also found that Chen's claim that he was persecuted for his religious beliefs was "implausible" because Chen failed to identify the Bible when asked to identify "the book that has all of Jesus's teachings," and because he did not attend church in the United States. **AR 7.** The BIA's plausibility findings are a

prime example of "cherry pick[ing] solely factors favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha,* 590 F.3d at 1040. Chen answered correctly every other question that was posed to him to test his knowledge of Christianity. **AR 186-90; 266.** Given the totality of his testimony, his inability to answer a vague question about the Bible – a book with which the rest of his testimony made clear that he was familiar – is not evidence of his lack of Christian faith. Similarly, although Chen did testify that he had not attended church in the United States, he also testified that he worked 12 hours a day, 6 days a week, and that his pastor came to his house once a week to worship. **AR 233, 180-81.** Under the totality of the circumstances, his failure to attend formal church services is not indicative of a lack of commitment to Christianity.

Finally, the BIA denied Chen's claim because he failed to provide evidence corroborating his religious practices in the United States.[2] **AR 7.** However, Chen did provide corroboration, in the form of a letter from his pastor confirming his "faithful[]" attendance at a "weekly Bible study fellowship." **ER 320.** The IJ was inconsistent in his treatment of the letter. Initially, he announced that he would give it very little weight, because the pastor was not available for cross

---

[2]On appeal, the government concedes that it was improper for the BIA to require Chen to obtain corroboration from his family in China. **RB 36 n.14.** Accordingly, that issue is no longer before us.

examination, the letter was not timely submitted, and the letter was not on letterhead or otherwise authenticated. **AR 126.** In his decision, however, he stated that the "letter was not admitted into evidence." **AR 34.** The BIA was similarly inconsistent in its treatment of the letter. It first stated that Chen had provided *no* corroborating evidence. It then acknowledged the pastor's letter in a footnote, but stated that it was insufficient to corroborate Chen's claim because it was untimely and unauthenticated. **AR 7.** I would hold that the BIA and IJ erred in their treatment of the letter for three reasons. First, the IJ's inconsistency deprived Chen of notice that his corroborating evidence had been denied admission; this apparently led to a similar inconsistency on the part of the BIA. Second, lack of authentication is insufficient reason for refusing to admit a document, or for deeming it unreliable. *See Wang v. INS*, 352 F.3d 1250, 1254 (9th Cir. 2003) (holding that the lack of authentication is not a ground for deeming a document unreliable or incredible). Third, where, as here, strict adherence to filing deadlines causes serious prejudice to a petitioner, and an exception to the deadline could be made with no prejudice to the government, the IJ should exercise his discretion to allow such an exception. *See Dedji v. Mukasey*, 525 F.3d 187, 188 (2d Cir. 2008).

I recognize that the REAL ID Act substantially broadens the grounds on which the BIA may base an adverse credibility determination. However, it does

not eliminate the requirement that adverse credibility determinations be reasonable, and grounded in substantial evidence in the record. *See Shrestha*, 590 F.3d 1039-45. I do not believe that the BIA's adverse credibility finding in this case was supported by substantial evidence. Accordingly, I dissent.