REINHARDT, Circuit Judge,
dissenting:
I dissent. I would hold that the inconsistencies that the majority concludes provide the “most significant” support for the BIA’s adverse credibility finding are, to the contrary, entirely insignificant. In fact, they are in most respects non-existent. In the remaining respects, they are trivial. As such, even under the REAL ID Act, they cannot support an adverse credibility determination. See Shrestha v. Holder, 590 F.3d 1034, 1043-44 (9th Cir. *643 2010). Moreover, the other reasons on which the BIA based its adverse credibility finding are also fatally flawed. Accordingly, I would grant the petition.[1]
The record reveals no contradiction between Chen’s and Chen’s sister’s testimony regarding the duration of his detention. Chen testified that he was detained for 48 hours; his sister testified that he was detained for “one day, 20 hours.” AR 159; AR 250. “One day, 20 hours” might, to an observer determined to search for ambiguity, appear at first glance to be ambiguous. To such an observer, the phrase might mean “one day or 20 hours.” However, to an objective observer who read the entire record it would mean, undisputably, “one day and 20 hours.” Such a reading renders Chen’s sisters testimony consistent, rather than inconsistent, with that which was given by her brother. Neither the BIA nor the IJ offered any explanation for choosing the inconsistent version. AR 5; AR 41-42. Without any reasoned basis for choosing between the two readings, the IJ’s and BIA’s choice is based on nothing more than rank speculation, and a disregard of the record as a whole, if not a desire to create inconsistency to the detriment of the asylum applicant. As such, it cannot support an adverse credibility determination.
Similarly, the record shows no inconsistency in Chen’s testimony as to whether he went directly home after being released. Chen stated several times that, after his release, he went home and saw his sister. AR 256, 159, 229. He never said that he went directly home. Id. When the IJ questioned him more specifically about when exactly he saw his sister, he stated that he saw her “two or three days” after his release. AR 257. There is no contradiction between his initial testimony that he went home after his release and his later testimony that he went home two or three days after his release. His later testimony is simply more specific. Moreover, it is consistent with his sister’s testimony that she saw him a few days after he was released from detention. AR 252. Because Chen made the statement that he saw his sister two or three days after his release before he had any knowledge of his sister’s testimony, the IJ’s conclusion that he was simply “trfying] to reconcile his own testimony with his sister’s testimony” is unfounded. AR 42; AR 256.
Finally, the majority relies on the fact that Chen testified that he was arrested on January 1, 2005, while his sister testified that she saw him on January 1, 2005 after he had been released. This is a discrepancy. However, it is trivial. There is no reason why Chen’s sister should have remembered the exact date on which she first saw her brother after he was released from detention one and a half years before. “[Ajnalysis on review ... should recognize that the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in *644 any witness’s case Shrestha, 590 F.3d at 1044-45.
The remaining reasons relied on by the BIA are similarly without merit. First, there were no inconsistencies between Chen’s and his sister’s testimony regarding the April 10, 2005 dinner. Compare AR 163-65 with AR 245-47. Second, Chen provided an explanation for his apparently inconsistent statements regarding whether the passport that he used to fly from Japan to the United States was green or grayish-black, and whether it contained his name. AR 218-19. To the extent that the record does not compel the conclusion that his explanation was satisfactory, this discrepancy still does not support an adverse credibility finding, because it is manifestly trivial. Shrestha, 590 F.3d at 1043-44. Chen’s inconsistency regarding whether he attended two or three home church meetings was similarly trivial. Moreover, he was never given an opportunity to explain it; accordingly, it cannot support an adverse credibility determination. See Shrestha, 590 F.3d at 1044; Ordonez v. INS, 345 F.3d 777 (9th Cir.2003). Finally, the IJ’s findings regarding Chen’s demeanor are not supported by the record. See Jibril v. Gonzales, 423 F.3d 1129 (9th Cir.2005). In fact, the record directly contradicts the IJ’s finding that Chen became so agitated when responding to questioning about the color of his passport that the IJ had to ask him to “stop repeatedly explaining himself and to listen to the questions.” AR 47; AR 216-20.
The BIA also found that Chen’s claim that he was persecuted for his religious beliefs was “implausible” because Chen failed to identify the Bible when asked to identify “the book that has all of Jesus’s teachings,” and because he did not attend church in the United States. AR 7. The BIA’s plausibility findings are a prime example of “cherry picking] solely factors favoring an adverse credibility determination while ignoring facts that undermine that result.” Shrestha, 590 F.3d at 1040. Chen answered eorrectly every other question that was posed to him to test his knowledge of Christianity. AR 186-90; 266. Given the totality of his testimony, his inability to answer a vague question about the Bible — a book with which the rest of his testimony made clear that he was familiar — is not evidence of his lack of Christian faith. Similarly, although Chen did testify that he had not attended church in the United States, he also testified that he worked 12 hours a day, 6 days a week, and that his pastor came to his house once a week to worship. AR 233, 180-81. Under the totality of the circumstances, his failure to attend formal church services is not indicative of a lack of commitment to Christianity.
Finally, the BIA denied Chen’s claim because he failed to provide evidence corroborating his religious practices in the United States.[2] AR 7. However, Chen did provide corroboration, in the form of a letter from his pastor confirming his “faithful[ ]” attendance at a “weekly Bible study fellowship.” ER 320. The IJ was inconsistent in his treatment of the letter. Initially, he announced that he would give it very little weight, because the pastor was not available for cross examination, the letter was not timely submitted, and the letter was not on letterhead or otherwise authenticated. AR 126. In his decision, however, he stated that the “letter was not admitted into evidence.” AR 34. The BIA was similarly inconsistent in its treatment of the letter. It first stated that Chen had provided no corroborating *645 evidence. It then acknowledged the pastor’s letter in a footnote, but stated that it was insufficient to corroborate Chen’s claim because it was untimely and unauthenticated. AR 7. I would hold that the BIA and IJ erred in their treatment of the letter for three reasons. First, the IJ’s inconsistency deprived Chen of notice that his corroborating evidence had been denied admission; this apparently led to a similar inconsistency on the part of the BIA. Second, lack of authentication is insufficient reason for refusing to admit a document, or for deeming it unreliable. See Wang v. INS, 352 F.Bd 1250, 1254 (9th Cir.2003) (holding that the lack of authentication is not a ground for deeming a document unreliable or incredible). Third, where, as here, strict adherence to filing deadlines causes serious prejudice to a petitioner, and an exception to the deadline could be made with no prejudice to the government, the IJ should exercise his discretion to allow such an exception. See Dedji v. Mukasey, 525 F.3d 187, 188 (2d Cir .2008).
I recognize that the REAL ID Act substantially broadens the grounds on which the BIA may base an adverse credibility determination. However, it does not eliminate the requirement that adverse credibility determinations be reasonable, and grounded in substantial evidence in the record. See Shrestha, 590 F.3d at 1039-45. I do not believe that the BIA’s adverse credibility finding in this case was supported by substantial evidence. Accordingly, I dissent.

. I would also hold that we have jurisdiction to determine whether the BIA and IJ properly considered the country conditions reports. Our case law is clear that a petitioner "need not ... raise the precise argument below” in order to exhaust his claims. Vizcarra-Ayala v. Mukasey, 514 F.3d 870, 873 (9th Cir.2008). Rather, the exhaustion requirement is satisfied when the petitioner "speciffies] which issues form the basis of the appeal." Id. (quoting Zara v. Ashcroft, 383 F.3d 927, 930 (9th Cir.2004)). In this case, Chen raised before the BIA both the issue whether he met his burden of establishing eligibility for asylum and the precise argument that the IJ had failed to sufficiently consider the country reports in evidence. AR 14-15. Accordingly, he more than satisfied our exhaustion requirement. Although I am therefore certain that we do have jurisdiction to determine whether the BIA and IJ properly considered the country conditions reports, I do not think it necessaty to reach that question in order to decide the case, and do not do so here.

. On appeal, the government concedes that it was improper for the BIA to require Chen to obtain corroboration from his family in China. RB 36 n. 14. Accordingly, that issue is no longer before us.