17-300
*Tiemogo v. Barr*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand nineteen.

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge,*
ROSEMARY S. POOLER,
SUSAN L. CARNEY,
*Circuit Judges.*

_____

AMADOU TIEMOGO,

*Petitioner*,

v.                                                              No. 17-300

WILLIAM P. BARR,
United States Attorney General,

*Respondent.*

_____

FOR PETITIONER:                    S. Michael Musa-Obregon, Esq., White
                                   Plains, NY.

FOR RESPONDENT:                    Gregory A. Pennington, Jr., Trial
                                   Attorney, Office of Immigration
                                   Litigation, Chad A. Readler, Acting

Assistant Attorney General, Civil Division, Carl McIntyre, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED**.

Petitioner Amadou Tiemogo, a native and citizen of Niger, seeks review of decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying Tiemogo's motion to reopen his removal proceedings. *In re Amadou Tiemogo,* No. A099 372 631 (B.I.A. Jan. 5, 2017), *aff'g* No. A099 372 631 (Immig. Ct. Hartford Nov. 18, 2015). We assume the parties' familiarity with the underlying facts and procedural history in this case, to which we refer only as needed to explain our decision to grant the petition for review.

We review the denial of a motion to reopen for abuse of discretion and related country conditions findings for substantial evidence. *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168-69 (2d Cir. 2008). The BIA abuses its discretion if it rests its decision on a "clearly erroneous factual finding." *Dedji v. Mukasey*, 525 F.3d 187, 191 (2d Cir. 2008). When addressing a motion to reopen, the Board "has an obligation to consider the record as a whole," and we may remand in cases where the BIA "failed to address all the factors relevant to petitioner's claim." *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 97 (2d Cir. 2001).

Tiemogo sought to reopen his removal proceedings under 8 U.S.C. § 1229a(c)(7)(C)(ii). The statute allows for reopening based on "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.*; *see also* 8 C.F.R. § 1003.23(b)(4)(i).

To be entitled to reopening, Tiemogo must also demonstrate that he is *prima facie* eligible for asylum—the underlying substantive relief he seeks. *See INS v. Abudu*, 485 U.S. 94, 104–05 (1988); *Poradisova v. Gonzales*, 420 F.3d 70, 78 (2d Cir. 2005) (requiring a "realistic chance that [petitioner] will be able to establish eligibility"). An individual who does not

2

claim past persecution—and Tiemogo does not—may establish asylum eligibility by demonstrating a fear of future persecution that is well founded—that is, a "subjective fear that is objectively reasonable." *Dong Zhong Zheng v. Mukasey*, 552 F.3d 277, 284 (2d Cir. 2009) (internal quotation marks omitted); *see also* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(b)(2). *See generally Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("For an asylum claim, the applicant must show a reasonable possibility of future persecution." (internal quotation marks omitted)). One may do so in two ways: "(1) by demonstrating that he . . . 'would be singled out individually for persecution' if returned, or (2) by proving the existence of a 'pattern or practice in [the] . . . country of nationality . . . of persecution of a group of persons similarly situated to [him]' and establishing his . . . 'own inclusion in, and identification with, such group.'" *Y.C.*, 741 F.3d at 332 (quoting 8 C.F.R. § 1208.13(b)(2)(iii)).

The BIA did not distinguish between Tiemogo's two asserted grounds for asylum: his fear of future persecution based on his religion (Muslim) and based on his particular social group (culturally Westernized, moderate Muslim). It simply concluded that Tiemogo did not demonstrate his *prima facie* eligibility as a moderate or westernized Muslim in Niger, ruling that Tiemogo had "failed to provide any evidence that 'moderate' [Muslims] in Niger are being persecuted," or any evidence "specifically discussing the treatment of 'moderate' Muslims and pertinent conditions in his homeland." A.R. 3. The BIA also decided that Tiemogo had submitted insufficient evidence of changed country circumstances with respect to persons of his religion and particular social group such as would "materially affect his current eligibility for asylum or withholding of removal." A.R. 4.

We conclude that, in both of these rulings, the BIA erred by not engaging with the record as a whole. *See Zhao*, 265 F.3d at 97. Tiemogo presented an affidavit from an individual based in the Nigerien capital Niamey averring that, as of November 2013, "the situation in Niger is characterized by a radicalization of Islam," and stating that he let his "[b]eard grow and go[es] to the mosque five times a day, so as to protect [himself] from these[] terrorist[s]." A.R. 394. Tiemogo also submitted an affidavit from a female family member in Niger asserting that, because of the "rise of Islamic fundamentalism . . . in Niger

3

. . . we are witnessing a profound change in [the] [d]aily life of everyday," and describing how she "wear[s] the veil all day in the sweltering heat [so as] not to be [the terrorists'] target." A.R. 397. He additionally placed before the agency country conditions evidence reflecting that, in the period leading up to his filing of his motion to reopen, Islamic fundamentalist group Boko Haram had intensified its attacks in Niger, targeting moderate Muslims and Westerners. *See, e.g.,* A.R. 61 (Department of State travel warning dated July 17, 2015, advising U.S. nationals to "reduce exposure to locations routinely frequented by Westerners" because such locations "have been targeted in the region by violent groups and will likely be targeted in the future"); A.R. 372, 375 (2012 news report that Boko Haram "is trying to spread its hard-line ideology and violent aspirations" in several Nigerien towns and referring to "several threatening letters [sent by Boko Haram] to Muslim imams who preached against the militia's ideology"). The BIA made no comment on this circumstantial evidence. If credited, however, it could tend to show that moderate Muslims are currently under serious threat in Niger—and that this threat is materially greater now than in 2007, when Tiemogo was first ordered removed.

Accordingly, we GRANT Tiemogo's petition for review and remand the matter to the BIA for determination whether the evidence submitted by Tiemogo in support of his motion to reopen constitutes material evidence of changed country conditions in Niger and whether it is sufficient to demonstrate that Tiemogo is prima facie eligible for asylum. Because Tiemogo's motion to reopen was filed in 2014, over five years ago, the agency may in its discretion also consider remanding to an immigration judge to allow for the submission of additional evidence reflecting country conditions in the present day. The BIA did not rule on the IJ's conclusion that Tiemogo's proposed particular social group of "persons with moderate religious beliefs who are seen to be [W]esternized" was not cognizable under *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014). Accordingly, we do not address it here.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

4