**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARAM MURADIN, aka Aram
Mooradyan,
              *Petitioner,*

          v.

ALBERTO R. GONZALES, Attorney
General,

              *Respondent.*

No. 03-74587

Agency No.
A78-754-318

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 7, 2006—Pasadena, California

Filed July 23, 2007

Before: Myron H. Bright,* Harry Pregerson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Garbis N. Etmekjian, Glendale, Arizona, briefed and argued for the petitioner.

Thomas L. Holzman and Virginia Lum, Washington, D.C., briefed and argued for the respondent.

## OPINION

BRIGHT, Circuit Judge:

Aram Muradin, a citizen and native of Armenia, petitions for review of the Board of Immigration Appeals' (BIA) order removing him to Armenia. The BIA affirmed the Immigration Judge's (IJ) denial of Muradin's applications for asylum and withholding of removal but reversed the IJ's decision granting Muradin relief pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).[1] For the reasons set forth herein, we affirm in part and reverse in part.

Although the IJ did not enter an order of removal or make an explicit finding of removability, Muradin conceded removability before the IJ. *See Lolong v. Gonzales*, 484 F.3d 1173, 1176 (9th Cir. 2007) (en banc) (noting finding of removability was based on petitioner's concession of removability). Further, the IJ's grant of relief necessarily requires the IJ to have already determined Muradin is removable. *See id.* at 1177. We therefore have jurisdiction to review the BIA's order of removal in this case because it followed an initial determination of removability by the IJ. *See id.* at 1178 (overruling *Molina-Camacho v. Ashcroft*, 393 F.3d 937 (9th Cir. 2004), to conclude that "where the IJ has previously determined that the alien is removable but grants cancellation of removal, the BIA's decision to reverse the cancellation of removal reinstates the initial finding of removability, which, under the statute, is effectively an order of removal.")

---

[1]Article 3 of CAT provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, art. 3, 1465 U.N.T.S. 85, 23 I.L.M. 1027, 1028; *see also* 8 C.F.R. § 208.17.

*Background*

In August 2000, Muradin attempted to enter the United States using an alien card belonging to another individual. The Immigration and Naturalization Service placed him in removal proceedings. Muradin conceded removability but sought asylum, withholding of removal, and relief under CAT.

Before the IJ, Muradin testified that he had been mistreated by Armenian military officers and feared the military would persecute, torture, or kill him if he returned to Armenia. Muradin recounted how he was abused and beaten while in the military. He testified that after he witnessed three officers beat a soldier to death, the head of his military unit threatened and starved him, and locked him in isolation. He also stated that in 1998, a senior officer left Muradin and five others in a tent in the mountains without food. When, after eleven days, the soldiers left the mountains to seek food in a village, the officer arrested them for violating his orders. Muradin testified that he was then kept in custody for two months. Although Muradin's service was scheduled to end in August 1999, he was forced to work on the construction of his officer's house until he escaped in April 2000. He testified that during this time he was beaten, tortured, and kept in a basement. After he escaped to his parents' house, the military police came looking for him and assaulted his parents. Muradin left Armenia shortly thereafter.

The IJ found Muradin credible, but denied his requests for asylum and withholding of removal because Muradin had not shown his persecution was on account of race, nationality, membership in a particular social group, or political opinion. At the hearing, Muradin's counsel argued that he should be eligible for relief based on imputed political opinion — his mother was a member of an organization that supported the rights of Armenian soldiers. The IJ rejected this argument,

stating that "there is no evidence in the record [that] points to this ground."

The IJ nonetheless granted Muradin's application for protection pursuant to CAT, determining that Muradin would face torture at the hands of the military establishment if he returned to Armenia. The IJ based this decision in large part on the State Department report on Armenia, saying the report made clear "that the conditions that exist for common soldiers in the Armenian army are best described as dire[,]" and indicated "that the manner in which prisoners are treated, both in military custody and in civilian custody in the prisons, involve the use of torture . . . ."

Muradin appealed to the BIA the IJ's denial of asylum and withholding of removal, and the Department of Homeland Security cross-appealed the IJ's decision to grant CAT protection. The BIA adopted and affirmed the IJ's determinations with respect to Muradin's ineligibility for asylum or withholding of removal, but vacated the IJ's decision insofar as it granted Muradin's request for protection under CAT. The BIA reasoned that although Muradin claimed to fear torture at the hands of the military police, the record did not show that he had been tortured or would likely be tortured upon return to Armenia.

*Analysis*

Where the BIA expressly adopts the IJ's findings and reasoning, as it did in this case with respect to Petitioner's request for asylum or withholding of removal, we review the decision of the IJ as if it were that of the Board. *Al-Harbi v. INS*, 242 F.3d 882, 887 (9th Cir. 2001). We review for substantial evidence the factual findings underlying the BIA's determination that Muradin was ineligible for relief under CAT. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003). This court must uphold the IJ's findings and conclusions if they are "supported by reasonable, substantial, and probative

evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted). To prevail, Petitioner must demonstrate that evidence in the record compels reversal. *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir. 2001).

*Asylum*

**[1]** Muradin first argues that the IJ erred in finding him ineligible for asylum and withholding of removal. To qualify for asylum, an alien must show he is a "refugee" by providing evidence of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Muradin asserts that he was persecuted either on account of his membership in a particular social group, specifically former soldiers, or because of imputed political opinion.

**[2]** In affirming the IJ's denial of asylum and withholding of removal, the BIA stated, "we agree with the Immigration Judge that the harm the respondent testified he suffered and the fears in the future has not been adequately established to be on account of actual or imputed political opinion, membership in a particular social group, or any other ground protected under the Act." The IJ, however, did not address Muradin's claim that he was persecuted because he belonged to a particular social group; it only addressed the merits of Muradin's imputed political opinion claim. In light of the IJ's failure to address this argument, and the BIA's reliance on the IJ's order, we remand for additional investigation or explanation. *See Singh v. Gonzales*, 416 F.3d 1006, 1015 (9th Cir. 2005) (remanding for failure to address one of petitioner's arguments); *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040-41 (9th Cir. 2005) (remanding for failure to address one of applicant's arguments); *see also Navas v. INS*, 217 F.3d 646, 658 n. 16 (9th Cir. 2000) (noting that this court "cannot affirm the BIA on a ground upon which it did not rely").

**[3]** With respect to imputed political opinion, we agree with the IJ that the record contains no evidence that a political opinion has been imputed to Muradin by virtue of his mother's membership in an organization supporting the rights of soldiers. Therefore, we affirm the denial of asylum and withholding of removal because Muradin has failed to show persecution on account of an imputed political opinion.

*Convention Against Torture*

**[4]** Next, Muradin argues that substantial evidence does not support the BIA's determination that he is ineligible for relief under CAT. CAT requires the petitioner to establish that it is more likely than not that he would be tortured with the acquiescence of the Armenian government if he returned to Armenia. *See* 8 C.F.R. §§ 208.16(c)(2), 208.18; *Zheng*, 332 F.3d at 1194. Petitioner need not show that he will be tortured on account of a protected ground. *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001). The BIA reversed the IJ's decision regarding CAT relief because it determined Muradin had not been tortured while in the military and evidence in the record of the conditions in Armenia did not support the conclusion that Muradin would more likely than not be tortured upon his return. The record, however, compels a contrary conclusion.

**[5]** Where, as here, the IJ expressly finds the petitioner's testimony to be credible, and where the BIA makes no country finding, we accept as true the petitioner's testimony given at the hearing before the IJ. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995). Muradin testified that in August 1998, he was hospitalized in a military facility, where he received treatment for a beating that occurred during an eleven-day military assignment on a mountain. Muradin was treated for fractures on his face and nose, as well as for frostbite. Muradin also testified that when he was forced to work on his superior officer's house for seven months, he was beaten and kept in isolation. When Muradin escaped from the

officer's ranch, he returned home with a broken nose, back pain, and knee problems.

The record also contains the State Department's report on Armenia. The report explained that, although Armenia's Constitution and laws prohibit torture, security personnel routinely beat and torture suspects in criminal investigations. It further stated that prison conditions are "harsh and life threatening" and within the military, conscripts are physically abused. Although the report indicated that the number of conscript deaths from physical abuse decreased 18% between 1999 and 2001, the report also stated that there are between sixteen to twenty noncombat deaths per month. In 1998, a conscript arrested for being absent without leave was beaten so badly that he subsequently died. Finally, the report noted that the Armenian government "has not conducted investigations of abuse by security services except in rare cases where death has resulted and under pressure from human rights groups."

[6] In sum, Muradin, who the IJ deemed credible, testified that military officers had severely abused and beaten him. In addition, the State Department's report makes clear that torture of conscripts, prisoners, and deserters is likely. We therefore grant Muradin's petition for review and hold that substantial evidence supports Muradin's eligibility for CAT relief. We vacate the BIA's order and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.