**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FILIBERTO ALCAREZ-RODRIGUEZ, AKA ASHLEY RODRIGUEZ, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 21-411 Agency No. A098-571-281 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 9, 2023[*]
Pasadena, California

Filed December 28, 2023

Before: Ronald Lee Gilman,[**] Danielle J. Forrest, and
Holly A. Thomas, Circuit Judges.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Ronald Lee Gilman, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

Opinion by Judge Gilman;
Concurrence by Judge Forrest

## SUMMARY[***]

### Immigration

The panel granted Ashley Rodriguez's petition for review of the Board of Immigration Appeals' decision and order denying her motion to remand for the consideration of her application for asylum, withholding of removal, and protection under the Convention Against Torture, and remanded for the BIA to properly consider the merits of Rodriguez's motion.

After setting a deadline for Rodriguez to file her application for asylum and related relief, an Immigration Judge sua sponte rescheduled the hearing several times. When Rodriguez appeared for her hearing, her counsel requested additional time, and later requested an extension because he was having difficulty reaching Rodriguez. The IJ denied the motion, vacated the upcoming hearing date, and ordered Rodriguez's removal. Rodriguez challenged these decisions, and the BIA denied Rodriguez's motion to reopen, dismissed her appeal, and denied her motion to remand.

The panel held that in denying Rodriguez's motion to remand, the BIA abused its discretion by failing to address

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

her arguments that she could establish prima facie eligibility for relief with evidence that was unavailable at the time of her filing deadline, namely evidence related to her criminal history and medical conditions that was unavailable to her during the relevant period because she was homeless and did not have access to her personal documents. The panel explained that both categories of evidence were highly relevant to whether she could establish prima facie eligibility for relief because of her status as an HIV-positive transgender woman and rape survivor. The panel remanded for the BIA to consider whether Rodriguez's evidence was material and not reasonably available to her at the time of the final filing deadline.

The panel held that the BIA also abused its discretion in failing to properly evaluate whether Rodriguez had established good cause for missing the filing deadline. First, the panel held that a good-cause standard governs the BIA's denial of a motion to remand to apply for asylum. The panel noted that traditionally the BIA would grant a motion to reopen or remand to apply for discretionary relief only if the noncitizen either: (1) was not afforded the right to apply for that relief at her former hearing, or (2) is seeking that relief based on circumstances that arose after the hearing. However, in *Matter of R-C-R-*, 28 I. & N. Dec. 74 (BIA 2020), the BIA recognized a good-cause exception to these limitations. Concluding that *Matter of R-C-R-*'s good-cause standard was consistent with principles of fairness and immigration judge discretion, the panel accorded it *Skidmore* deference.

Next, the panel concluded that the BIA's conclusory one-sentence dismissal of Rodriguez's personal circumstances as not amounting to good cause, with no further explanation, was insufficient. Because the BIA did

not articulate the proper framework for determining whether she had good cause for missing the filing deadline, the panel remanded for the BIA to consider that issue in the first instance.

Concurring in the judgment, Judge Forrest agreed with the majority that this case must be remanded for the BIA to resolve Rodriguez's request to reopen under the proper legal standard, but she disagreed, in part, with the majority's view of that standard. In Judge Forrest's view there is no basis for applying a good-cause exception to excuse a petitioner's failure to timely file an application for discretionary relief, including asylum, in the context of reopening removal proceedings. Judge Forrest would remand for the BIA to consider whether Rodriguez's request satisfies the governing regulatory requirements.

## COUNSEL

Mariana L. Hanna (argued), Law Offices of Mariana L. Hanna, San Diego, California, for Petitioner.

Aaron Nelson (argued) and Sarah L. Martin, Trial Attorneys; Corey L. Farrell; Gregory D. Mack, Senior Litigation Counsel; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; for Respondent.

## OPINION

GILMAN, Circuit Judge:

Ashley Rodriguez, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals's (BIA's) decision and order denying her motion to remand her removal proceedings to the Immigration Judge (IJ) for the consideration of her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA did not adequately consider Rodriguez's arguments in support of her motion to remand, we **GRANT** the petition for review and **REMAND** the case to the agency to properly consider the merits of Rodriguez's motion.

## I. BACKGROUND

On October 17, 2014, the Department of Homeland Security (DHS) served Rodriguez with a putative Notice to Appear (NTA) that did not specify the date or time of any subsequent removal hearings. The NTA alleged that Rodriguez (1) was not a citizen or national of the United States, (2) was a native and citizen of Mexico, (3) had entered the United States near Otay Mesa, California, on approximately September 27, 2010, and (4) had not been admitted or paroled after inspection by an immigration officer. Rodriguez was also charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without inspection or parole. DHS did not file the NTA with the immigration court until March 13, 2015, approximately five months after the NTA was served on Rodriguez.

On March 27, 2015, the immigration court issued a notice stating that Rodriguez's first master calendar hearing was to take place two months later, on June 9, 2015. Rodriguez appeared at the hearing and, through counsel, admitted the first two factual allegations stated in the NTA. She denied, however, the remaining allegations and contested the removability charge.

Because Rodriguez's removability had not yet been established, and because DHS has the burden on this issue, the IJ rightly determined that "[a]ny request for asylum seems premature." The IJ then scheduled another master calendar hearing for eight months later, on February 3, 2016, and gave Rodriguez a deadline of November 3, 2015 to submit a written change to her initial pleading if she wished to do so. Rodriguez complied with the IJ's directions and, on November 3, 2015, she filed an amended pleading in which she conceded her removability.

At the February 3, 2016 hearing, the IJ scheduled yet another master calendar hearing for sixth months later, on August 17, 2016. Rodriguez's application for asylum, withholding of removal, and CAT protection was to be filed with the immigration court at that hearing.

But the August 2016 hearing never materialized. On July 8, 2016, the immigration court sua sponte rescheduled the hearing for March 1, 2017. The immigration court sua sponte rescheduled the hearing yet again on November 28, 2016, this time for May 24, 2017. And on May 4, 2017—three weeks before the already twice-rescheduled hearing was to take place—the immigration court sua sponte rescheduled Rodriguez's proceedings a third time, for December 13, 2017.

At the December 13, 2017 hearing, the IJ asked Rodriguez's counsel whether counsel had prepared an application for relief.  Counsel responded by requesting additional time to review Rodriguez's medical records.  The IJ agreed to provide more time and also scheduled a hearing on the merits of Rodriguez's forthcoming applications for relief for November 6, 2018.  Because Rodriguez's merits hearing would not take place for another 11 months, the deadline for her application for relief was set for September 6, 2018.  The IJ told Rodriguez that if the application was not submitted by that date, Rodriguez "r[a]n the risk" of her application being denied.

On September 5, 2018, Rodriguez's counsel filed a motion to extend the filing deadline by 15 days because counsel had been having difficulty reaching Rodriguez.  The IJ did not act on the motion until October 4, when he simultaneously denied the extension, vacated the November 6, 2018 hearing, and ordered Rodriguez's removal.

Rodriguez filed a motion to reopen with the immigration court on October 30, 2018.  The motion set forth the reasons for Rodriguez's delay in filing her application and included supporting documentation.  Rodriguez concurrently filed her completed application for humanitarian relief in the form of asylum, withholding of removal, and CAT protection, along with supporting evidence.

In addition to her motion to reopen with the immigration court, Rodriguez filed a notice of appeal with the BIA on November 2, 2018.  She appealed based on the IJ's "err[or] in determining that [Rodriguez] had abandoned her relief applications for failure to timely file."

The BIA acknowledged receipt of Rodriguez's notice of appeal on November 9, 2018.  It subsequently assumed

jurisdiction over her motion to reopen. In response, Rodriguez filed an amended motion to remand (improperly styled as a motion to reopen) on December 26, 2018.

According to the motion, Rodriguez learned in 2015 that she had contracted HIV from her physically abusive former partner. She left that partner in approximately November 2017, just before the master calendar hearing during which the IJ set the September 2018 deadline for the filing of Rodriguez's application for relief. Because of her immigration status, Rodriguez was not authorized to work in the United States and was thus financially dependent on her partner.

Rodriguez became homeless without her partner's support, and her phone was eventually disconnected. She therefore received no communication from her attorney until September 5, 2018, when her ex-partner's mother hand-delivered a letter that had been sent to Rodriguez's former residence. During this time, moreover, Rodriguez was unable to access medical documents and criminal records relevant to her asylum application because she lacked funds to pay the storage facility where those documents were kept.

The motion also detailed Rodriguez's health challenges. Rodriguez was severely depressed and suffered from suicidal ideations. She was also immunocompromised because of her HIV and had gone to the emergency room three times in September 2018, the very month when her relief application had been due.

Finally, Rodriguez's motion included her application for asylum, withholding of removal, and CAT protection, along with supporting evidence that she contended would demonstrate her prima facie eligibility for relief. Rodriguez

requested in the alternative that the BIA exercise its discretion to remand her proceedings sua sponte.

The BIA did not issue a briefing schedule for Rodriguez's appeal until September 16, 2020, nearly two years after Rodriguez filed her motion to remand. Nine months later, on June 17, 2021, the BIA denied Rodriguez's motion and dismissed her appeal. In so doing, however, the BIA did no more than cursorily consider the merits of the motion to remand.

Rodriguez timely petitioned for review before this court on July 16, 2021. She does not, contrary to the government's assertions, argue that the IJ erred in initially deeming her application abandoned, or that the IJ abused his discretion when he refused to extend her September 2018 filing deadline. Similarly, Rodriguez does not seek review of the BIA's refusal to exercise its sua sponte authority to grant her motion to remand. And she nowhere requests us to adjudicate a request for humanitarian asylum, a specific form of relief from removal whose requirements are set forth in 8 C.F.R. § 1208.13(b)(1)(iii) (2023).

Rodriguez instead simply requests us to remand her case to the BIA so that it might properly consider her motion to remand. The motion was filed on the basis of (1) newly available evidence that established her prima facie eligibility for the relief sought, and (2) good cause for missing the IJ's September 6, 2018 filing deadline.

## II. ANALYSIS

Rodriguez's amended motion to reopen, filed with the BIA on December 26, 2018, is properly characterized as a motion to remand proceedings to the IJ. *See Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987) (noting that where an

appeal is pending and the BIA has not yet issued a decision, a motion to reopen before the BIA should be treated as a motion to remand).  However, "[t]he formal requirements of the motion to reopen and those of the motion to remand are for all practical purposes the same." *Id.*

## A.  Standard of review

We review the BIA's denial of a motion to remand using the abuse-of-discretion standard.  *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003).  The BIA abuses its discretion when it "act[s] arbitrarily, irrationally, or contrary to law." *Mohammed v. Gonzales*, 400 F.3d 785, 791 (9th Cir. 2005). Such abuse includes "when it fails to offer a reasoned explanation for its decision, [or when it] distorts or disregards important aspects" of the claim.  *Malhi*, 336 F.3d at 993 (quoting *Konstantinova v. INS*, 195 F.3d 528, 529 (9th Cir. 1999)).

## B.  The BIA abused its discretion by failing to address Rodriguez's arguments that she could establish prima facie eligibility for withholding of removal and CAT protection with evidence that was unavailable at the time of her filing deadline

A motion to reopen or to remand for the purpose of applying for nondiscretionary relief, such as for withholding of removal and CAT protection, has three regulatory requirements.  The motion must (1) "state the new facts that will be proven at a hearing to be held if the motion is granted," (2) "be accompanied by the appropriate application for relief and all supporting documentation," and (3) proffer evidence that "is material and was not available and could not have been discovered or presented at the former hearing."   8 C.F.R.  §  1003.2(c)(1) (2023).   A noncitizen seeking reopening or remand "need only establish

a prima facie case for relief, and need not conclusively establish that [she] warrants relief." *Salim v. Lynch*, 831 F.3d 1133, 1139 (9th Cir. 2016) (cleaned up).

Although the regulation references a "former hearing," a noncitizen may move to reopen or to remand for the purpose of submitting an application for relief even if the IJ did not previously hold a merits hearing on that claim. *See Reyes-Corado v. Garland*, 76 F.4th 1256, 1260 (9th Cir. 2023) (collecting cases) (noting that this court "ha[s] long read 8 C.F.R. § 1003.2(c)(1) to contemplate two kinds of motions to reopen: those raising changed circumstances affecting a previously raised claim, and those 'for the purpose of submitting an application for relief'"); *see also Silva v. Garland*, 993 F.3d 705, 717 (9th Cir. 2021) ("Although [the respondent] did not seek relief from removal at his initial hearing, an alien may move to reopen proceedings for the purpose of submitting *new* applications for relief.") (emphasis added).

The second kind of motion to reopen (or to remand) is applicable here, and such a motion does not require a "former hearing" because an IJ could not have held such a hearing on an application for relief that had not yet been submitted. Therefore, with regard to Rodriguez's withholding and CAT claims, her motion to remand was required only to (1) state the new facts to be proven at a merits hearing, (2) include the appropriate application and supporting documentation, and (3) proffer evidence that was "material and was not available and could not have been discovered or presented" at the time of her application deadline. *See* 8 C.F.R. § 1003.2(c)(1).

The government does not dispute that Rodriguez satisfied the first two requirements. As to the third,

Rodriguez explained in her motion that evidence related to her criminal history and medical conditions was quite literally unavailable to her during the relevant period because she was homeless and did not have access to her personal documents.  Both categories of evidence are highly relevant to her relief application.  *See* Form I-589, Part C, Question 6 ("Attach documents referring to [criminal] incidents, if they are available, or an explanation of why documents are not available."); *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1090–91 (9th Cir. 2005) (commenting on Mexico's hostility toward persons with HIV/AIDS and holding that the INS had failed to show the reasonableness of internal relocation in light of, among other factors, the petitioner's diagnosis).  As this court has previously held, "[i]t is not sufficient that the evidence physically existed in the world at large; rather, the evidence must have been reasonably available to the petitioner." *Oyeniran v. Holder*, 672 F.3d 800, 808 (9th Cir. 2012).

Rodriguez also argued that her evidentiary submission demonstrated her prima facie eligibility for the relief that she sought because of her status as an HIV-positive transgender woman and rape survivor—a conclusion that, in light of this court's caselaw, appears eminently reasonable.  *See, e.g.*, *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1081–82 (9th Cir. 2015) (concluding that the record compelled a finding that the petitioner was more likely than not to be tortured in Mexico on account of her identity as a transgender woman); *De La Luz Ramos v. Garland*, 861 F. App'x 145, 148–49 (9th Cir. 2021) (same).

Yet the BIA's decision is devoid of any evaluation of whether Rodriguez's evidence in support of her application for asylum and related relief was material and not reasonably available to her at the time of the September 6, 2018 filing

deadline. The BIA's *acknowledgement* of Rodriguez's personal circumstances is hardly a substitute for its failure to *evaluate* her legal arguments relating to those circumstances. And, as we have emphasized before, the IJ's or the BIA's "failure to address [an] argument" requires us to "remand for additional investigation or explanation." *Muradin v. Gonzales*, 494 F.3d 1208, 1210 (9th Cir. 2007); *see also Barroso v. Gonzales*, 429 F.3d 1195, 1208 (9th Cir. 2005) ("In failing to address this separate ground for relief, the BIA abused its discretion.").

For the benefit of the BIA on remand, we offer a final point. Our precedent requires only that the evidence was not "reasonably available to the petitioner," *Oyeniran v. Holder*, 672 F.3d 800, 808 (9th Cir. 2012), and the availability of evidence at some point prior to a petitioner's filing deadline does not mean that such evidence is forever available to the petitioner for purposes of a motion to reopen or remand.

Rodriguez was in the process of gathering evidence when she fled her abusive partner and was no longer able to access the documents that she had already collected. That evidence became unavailable once she became homeless, destitute, and unable to contact her attorney. Moreover, we see no reason to penalize Rodriguez for failing to meet a December 2017 deadline that the IJ vacated and extended to September 2018, particularly because neither party has asked us to do so. The BIA should therefore decide on remand whether any evidence that Rodriguez might have been able to access years earlier but that became unavailable more than ten months before the September 2018 filing deadline was still "reasonably available" to her as the deadline approached. *See Oyeniran*, 672 F.3d at 808.

**C.** **The BIA abused its discretion in failing to properly evaluate whether Rodriguez had established good cause for missing the filing deadline imposed by the IJ**

### 1. *A good-cause standard governs the BIA's denial of a motion to remand when the noncitizen seeks to apply for asylum*

Asylum, unlike withholding of removal and CAT protection, is a discretionary form of relief. 8 C.F.R. § 1208.14(a) (2023). The BIA has traditionally granted a motion to reopen or remand "for the purpose of affording the [noncitizen] an opportunity to apply for any form of discretionary relief" only if the noncitizen either (1) was not afforded the right to apply for the discretionary relief at her former hearing, or (2) is seeking the discretionary relief "on the basis of circumstances that have arisen subsequent to the hearing." 8 C.F.R. § 1003.2(c)(1) (2023); 8 C.F.R. § 1003.23(b)(3) (2023). More recently, however, the BIA has recognized that "reconsideration or reopening by the Immigration Judge" would likely also be appropriate where the noncitizen has satisfied the additional requirement of "provid[ing] good cause for missing the deadline." *See Matter of R-C-R-*, 28 I. & N. Dec. 74, 78–79 (BIA 2020).

The concurrence believes that this statement in *Matter of R-C-R-* is dicta, Concurring Op. at 30, but we conclude otherwise. True enough, "'[t]he line is not always easy to draw' when deciding whether language in an agency adjudication is a binding rule or unnecessary dictum." *Route v. Garland*, 996 F.3d 968, 977 (9th Cir. 2021). But because the BIA "confront[ed] an issue germane to the eventual resolution of the case" and "resolve[d] it after reasoned consideration" when it concluded that a good-cause

exception can apply to missed deadlines, *see id.*, this holding from *Matter of R-C-R-* is eligible for deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *See Orellana v. Barr*, 967 F.3d 927, 934–36 (9th Cir. 2020) (deferring to the BIA's interpretation under *Skidmore* even though "[t]he BIA's analysis [] was not extensive").

One of the main questions before the BIA in *Matter of R-C-R-* was whether the IJ erred in deeming an application for relief from removal waived because it was submitted after the deadline. 28 I. & N. Dec. at 77–78. In affirming the IJ's refusal to accept the noncitizen's late application, the BIA explained that the authority to do so is not without limits. It then expressly recognized that IJs should accept late applications when the noncitizen files either (1) a motion to extend the application deadline that "explained [the petitioner]'s failure to comply with the . . . deadline or identified any difficulties he may have encountered that prevented his compliance" and "established good cause for extending the application deadline," or (2) a motion to reopen or to reconsider that "[included] a completed application with an explanation for his untimely filing" and "provided good cause for missing the deadline." *Id.* at 78. This reasoned consideration of the contours of the IJ's authority to accept late applications was "germane to the eventual resolution" of the issue, *Route*, 996 F.3d at 977, because the BIA could not have determined that neither situation applied to the noncitizen in *Matter of R-C-R-* without first explaining what those situations entailed.

The concurrence nevertheless argues that there is no good-cause exception because the motion-to-reopen regulations do not explicitly identify one. Concurring Op. at 30. But the BIA did not conclude that a motion to reopen or to remand was an improper vehicle to argue that a

petitioner had good cause for missing a filing deadline. Rather, it concluded only that Rodriguez's homelessness and inability to access her documents "[did] not amount to good cause for an extension of the filing deadline or a continuance," with no further explanation given. And as this court has stated before, we "cannot affirm the BIA on a ground upon which it did not rely." *Arredondo v. Holder*, 623 F.3d 1317, 1320 (9th Cir. 2010) (cleaned up).

Furthermore, as the Second Circuit has recognized, "both the IJ and district judge have the 'inherent discretion to depart from the letter of the Local Rules' in certain circumstances where 'fairness demands that noncompliance be excused.'" *Dedji v. Mukasey*, 525 F.3d 187, 192 (2d Cir. 2008) (citation omitted). The Second Circuit then held that even if the local rules issued pursuant to a regulation "do not explicitly identify a good-cause exception[,]" the IJ errs in "fail[ing] to consider whether, in the particular circumstances presented, a departure from [the local rule] was warranted" where the noncitizen "has demonstrated good cause for the failure to timely file documents and a likelihood of substantial prejudice from enforcement of the deadline." *Id.*

*Matter of R-C-R-*'s good-cause standard is fully consistent with the principle articulated by our sister circuits that "it is a matter of concern when an IJ's strict adherence to the established time limit prevents a petitioner from presenting his case." *Id.* (citing *Galicia v. Gonzales*, 422 F.3d 529, 539 (7th Cir. 2005)). We therefore find *Matter of R-C-R-* "persuasive in its own right," *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 161 (2012), so we will accord it *Skidmore* deference. *See Garcia v. Holder*, 659 F.3d 1261, 1266–67 (9th Cir. 2011) ("Pursuant to *Skidmore*, a reviewing court may properly resort to an

agency's interpretations and opinions for guidance, as they constitute a body of experience and informed judgment.") (cleaned up) (quoting *Skidmore*, 323 U.S. at 140); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (noting that when *Auer* deference does not apply, courts may defer under *Skidmore*).

Indeed, this circuit and others have previously employed the good-cause standard as a check against arbitrary and capricious decisionmaking by IJs with respect to the similar question of extending filing deadlines (as compared to considering an application for relief submitted after the filing deadline) even though the regulation governing extensions, 8 C.F.R. § 1003.31(h) (2023), also does not explicitly identify a good-cause exception. *See, e.g.*, *Segura v. Lynch*, 670 F. App'x 642, 643 (9th Cir. 2016); *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005); *Moreta v. Holder*, 723 F.3d 31, 34 (1st Cir. 2013); *Velazquez-Dias v. Holder*, 550 F. App'x 249, 250 (5th Cir. 2013).

In sum, noncitizens in removal proceedings must be afforded the fundamental fairness that is guaranteed by the Fifth Amendment. *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006). We thus find eminently reasonable the BIA's waiver of the general prohibition against considering discretionary applications where (1) the application is for relief based on credible fears of persecution, and (2) the noncitizen has established good cause for failing to timely file.

### 2. The BIA abused its discretion by failing to conduct a reasoned good-cause analysis

"We have long held that the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005). When it "fails to provide specific and cogent

reasons for its decision, we are left without a reasoned decision to review." *Id.*

In the present case, the BIA concluded that, "[w]hile [Rodriguez]'s personal circumstances are sympathetic, they do not amount to good cause for an extension of the filing deadline or a continuance of proceedings." It then cited several cases for the proposition that an IJ does not have an obligation to consider an application after a deadline has passed and good cause *has not been shown*. But those cases do not support the BIA's conclusion with respect to Rodriguez's motion because the key question is whether good cause actually existed *in this case*.

Similarly, the BIA observed that Rodriguez "had more than two and a half years to complete her application and failed to do so." Yet that, too, is not in controversy—Rodriguez does not dispute that she did not comply with the IJ's deadline, nor that the IJ properly exercised his discretion in denying her motion for an extension. The BIA was instead required to assess whether Rodriguez had established good cause, *after the fact*, for not meeting the IJ's deadline. Its one-sentence dismissal of Rodriguez's personal circumstances as "not amount[ing] to good cause[,]" with no further explanation, is a textbook example of a conclusory statement that "falls short of setting out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided" the issue. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1141 (9th Cir. 2004) (cleaned up).

"Absent an explanation from the [BIA], we have no choice but to conclude that the denial of the [motion] was arbitrary and unreasonable." *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009). We therefore hold that the BIA

abused its discretion in concluding, without any explanation, that Rodriguez had not established good cause for missing the September 2018 filing deadline for her asylum application.

## D. On remand, the BIA should determine the applicable good-cause standard

The BIA did not articulate the proper framework for determining whether Rodriguez had good cause for missing the filing deadline. We therefore remand for it to consider this issue in the first instance.

"[U]nder the ordinary remand rule, the agency should be given an opportunity in the first instance to make legal determinations entrusted to it by Congress." *Perdomo v. Holder*, 611 F.3d 662, 669 (9th Cir. 2010). Although "it may be appropriate for us to address the merits of purely legal claims over which the BIA claims no particular expertise and as to which we would not 'intrude upon [a] domain which Congress has exclusively entrusted to an administrative agency[,]'" *Ray v. Gonzales*, 439 F.3d 582, 591 (9th Cir. 2006) (cleaned up), that is not the case here.

The Supreme Court has held that, "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam). This court has accordingly remanded to the BIA when the issue "involve[d] close examination of the BIA's own appeals process." *Ray*, 439 F.3d at 591; *see also Ventura*, 537 U.S. at 18 (reversing this court's refusal to remand an asylum claim to the BIA for consideration in the first instance of changed country conditions).

The same logic applies to the immigration court's deadline-management process. We will therefore remand to the BIA for it to articulate the factors that determine whether good cause exists to extend a filing deadline. In doing so, we note that a good-cause framework as articulated in *Ahmed v. Holder*, 569 F.3d 1009 (9th Cir. 2009), governs the analogous question of whether good cause exists to grant a continuance. The crux of the issue in both cases is whether removal proceedings should be extended so as to ensure that those proceedings remain fundamentally fair to a petitioner who demonstrates diligence. We therefore suggest that the BIA consider whether a similar analysis should apply to extending filing deadlines.

## III.  CONCLUSION

For all the reasons set forth above, we **GRANT** the petition for review and **REMAND** the case to the agency to properly consider the merits of Rodriguez's motion to remand.

FORREST, Circuit Judge, concurring in the judgment:

Petitioner Ashley Rodriguez did not apply for asylum or any other relief from removal by the deadline set by the immigration judge, and the immigration judge denied Rodriguez's motion for a further extension of the filing deadline and deemed her application abandoned. Thereafter, Rodriguez appealed the denial of her motion for an extension and moved to reopen her proceedings before the immigration judge so she could file her otherwise untimely application for relief. The Board of Immigration Appeals (BIA) affirmed the immigration judge, concluding that Rodriguez failed to establish good cause for not meeting her filing deadline or for reopening her proceedings. The BIA did not otherwise address the requirements governing motions to reopen removal proceedings. I agree with the majority that this case must be remanded for the BIA to resolve Rodriguez's request to reopen under the proper legal standard. I disagree in part, however, with the majority's view of the governing legal standard. Specifically, there is no basis for applying a good-cause exception to excuse a petitioner's failure to timely file an application for discretionary relief, including asylum, *in the context of reopening removal proceedings*.

## I.   BACKGROUND

Rodriguez is a transgender woman and a citizen of Mexico. She most recently entered the United States in mid-2010. Four years later, the Department of Homeland Security charged her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) because she was present in the United States without having been admitted or paroled.

Rodriguez was represented by counsel throughout her immigration proceedings, and she appeared in immigration

court three times. Her first appearance was in June 2015, and she contested her removability. But a few months later, she changed her plea, conceded that she was removable, and indicated that she would apply for relief from removal.

Rodriguez next appeared in immigration court in February 2016. The immigration judge informed her that she needed to file any application for relief and supporting documents by her next hearing date in August 2016. Rodriguez's counsel confirmed receiving this deadline. Rodriguez was also given written notice that failing to file a timely application "will result in the conclusion that such applications are abandoned." Ultimately, the immigration court sua sponte continued Rodriguez's hearing to December 2017, and Rodriguez did not file her application by the initial August 2016 deadline.

Rodriguez's final appearance before the immigration judge was on December 13, 2017. At that hearing, she reiterated her intention to apply for relief from removal but said she needed more time to complete an application. The immigration judge then set a new application deadline for September 6, 2018, with a merits hearing to follow in November of that year. The immigration judge addressed Rodriguez directly, stating: "[P]lease bear in mind that if the Court does not receive all of the necessary documents by September 6th, 2018, you run the risk of your Application being denied simply for failure to meet all of the requirements. So pay attention to that date." The parties also received written notice confirming the application deadline, which stated: "All relief applications and documents in support thereof . . . must be filed no later than 9-6-2018, or by such date as may be extended by the Immigration Judge. Failure to timely file the aforementioned documents will

result in the conclusion that such applications are abandoned."

Nine months passed. The day before Rodriguez's filing deadline, her counsel moved for a 15-day extension. The sole reason she gave for the motion was that she "had difficulty reaching [Rodriguez] to finalize the relief applications and require[d] additional time to do so." The immigration judge denied this motion a month later, concluding that counsel's difficulty in reaching her client did not constitute good cause for an extension. The immigration judge further noted that Rodriguez had been given "many months to prepare and perfect a timely filing" and that "four weeks have now passed beyond the deadline without any filing." And consistent with the prior oral and written cautions that were provided, the immigration judge deemed any application that Rodriguez intended to file abandoned and ordered her removed to Mexico.

Rodriguez did two things in response. First, in late October 2018, she filed a motion to reopen her proceedings with the immigration judge, arguing that she had "good cause" for her motions and asking that she be "afforded a full and fair hearing on her applications for relief." In support of her motion, she filed a declaration explaining why she did not file a timely application. She stated that she was diagnosed with HIV in 2015, and that she was in an abusive relationship from 2014 through November 2017. She was financially dependent on her partner because of her immigration status, and when she left that relationship, she became homeless and had depression. She could not get to her attorney's office because she could not pay for transportation, and documents that she needed for her application were in storage that she could not access because she could not pay her storage bill. She also presented

supporting evidence from her psychiatrist, a homeless shelter, her social services case worker, and her medical records confirming she had multiple emergency room visits in September 2018.

With her motion, she submitted a completed application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), as well as an additional declaration stating that was raped and harassed in Mexico because of her gender identity and that she would not be able to afford her necessary medications and medical treatment in Mexico. She also submitted country-conditions and human-rights reports detailing the treatment of transgender persons in Mexico.

Second, in early November 2018, after filing her motion to reopen with the immigration judge, Rodriguez appealed the immigration judge's removal order to the BIA. In her Notice of Appeal, she argued that she had not abandoned her application because she moved for an extension before the deadline passed, and her motion was not timely decided. Because Rodriguez filed an appeal while her motion to reopen was pending with the immigration judge, jurisdiction over her motion transferred to the BIA. Less than two months later, Rodriguez filed a duplicate motion to reopen with the BIA.[1]

---

[1] Although Rodriguez styled her motion filed with the BIA as a motion to reopen, it is properly viewed as a motion to remand because it was filed while her appeal was pending. *See Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987). Therefore, I refer to her second motion to reopen as a motion to remand. But the nomenclature makes little difference because "[t]he formal requirements of the motion to reopen and those of the motion to remand are for all practical purposes the same." *Id*.

The BIA set October 7, 2020, as the deadline for Rodriguez to file her appellate brief. The day after this deadline passed, the BIA received a motion for extension of time from Rodriguez's counsel, stating more time was needed because of "ongoing medical issues which have required several doctors' appointments." The BIA denied this motion as untimely. A few weeks later, Rodriguez asked the BIA to "accept her Motion to Reopen, filed with the Board on December 26, 2018, in place of her appellate brief," which would mean that she filed a timely appellate brief. The BIA granted this request and treated Rodriguez's motion as her appellate brief.

Ultimately, the BIA denied Rodriguez's motion to remand and affirmed the immigration judge. In doing so, the BIA expressly recognized Rodriguez's argument for why she was entitled to present her application for relief despite missing her filing deadline—that "she was unable to communicate with her attorney and provide . . . corroborating evidence supporting her claim prior to the filing deadline because she was a victim of domestic violence, had contracted HIV, became homeless, and required emergency medical attention . . . due to her weakened immune system." The immigration judge also noted that she submitted documentation supporting her explanation. But, acknowledging that Rodriguez's personal circumstances were sympathetic, it concluded that they did "not amount to good cause for an extension of the filing deadline *or a continuance of proceedings*" because she "had more than two and a half years to complete her application and failed to do so." The BIA also declined to reopen Rodriguez's proceedings sua sponte.

Rodriguez timely appealed, arguing that the BIA (1) failed to properly analyze whether she was entitled to reopen

her proceedings before the immigration judge for the purpose of filing an application for relief based on newly available evidence, and (2) abused its discretion in concluding that she lacked good cause for missing her September 2018 application.

## II.  DISCUSSION

### A.  Motion to Remand

#### 1.

Rodriguez suggests that the BIA addressed only her appeal challenging the denial of her last-minute motion for an extension of the application deadline and failed to consider her motion to remand. We review de novo whether the agency properly considered a petitioner's motion to remand. *Narayan v. Ashcroft*, 384 F.3d 1065, 1068 (9th Cir. 2004). "A motion to remand may be considered a part of the appeal to the BIA . . . when the motion concerns the remedy requested by the appeal." *Id.* Thus, we look to the "remedy requested"—what the motion to remand asks the BIA to do—in determining whether it must be addressed separately from the merits of the appeal. *Id.*

Here, Rodriguez's motion to remand seeks the same remedy requested in her appeal: a remand for the immigration judge to decide her application for relief on the merits. Her motion asked the BIA to "reopen removal proceedings and remand the record to the Immigration Judge . . . to adjudicate [her] relief applications," and her appeal requested reversal of the immigration judge's determination that her application was abandoned so that it could be considered on the merits. Perhaps the clearest evidence that Rodriguez's motion "concerns the remedy requested by the appeal," *id.*, is that she asked the BIA to treat her motion to

remand as her appellate brief. On this record, the BIA was not required to separately "address and rule upon [the] remand motion[]." *Id.* Thus, I conclude that the BIA did consider Rodriguez's motion to remand and not just the merits of her appeal.

**2.**

The BIA's denial of a motion to remand is reviewed for abuse of discretion. *See Taggar v. Holder*, 736 F.3d 886, 889 (9th Cir. 2013). A motion seeking to reopen proceedings to apply for nondiscretionary relief from removal must state, among other things, "the new facts that will be proven at a hearing to be held if the motion is granted" and "be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). Reopening is not permitted unless the new evidence presented is "material" to the claim for relief "*and* was not available and could not have been discovered or presented" previously. 8 C.F.R. § 1003.2(c)(1) (emphasis added); *see also* 8 C.F.R. § 1003.23(b)(3). That is, as a matter of plain language, both materiality *and* prior unavailability must be shown. 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3).

The regulations impose additional requirements where a petitioner seeks to reopen to apply for discretionary relief, including asylum. In that context, in addition to meeting the requirements applicable to motions to reopen to seek nondiscretionary relief, the motion to reopen must be "sought on the basis of circumstances that have arisen subsequent to the hearing," assuming the petitioner was fully informed of her right to apply for discretionary relief and given an opportunity to do so at the prior hearing. *Id.*

Rodriguez argues that the BIA did not apply the proper legal standard in assessing her motion to remand because it

failed to consider whether her newly presented evidence satisfied the requirements for reopening and demonstrated that she is prima facie eligible for relief. Rodriguez's argument is well taken, and I agree with the majority that a remand is required so that the BIA can assess whether Rodriguez's new facts and evidence justify reopening her removal proceedings under the governing regulations. I do not join, however, the majority's direction to the BIA regarding how to conduct its analysis on remand. *See* Maj. Op. at 13. And as explained below, I disagree that a good-cause exception applies to the extent Rodriguez seeks to reopen her removal proceedings to apply for asylum.

## B.   Good-Cause Exception

Immigration judges are authorized to "set and extend time limits for the filing of applications and related documents and responses thereto, if any." 8 C.F.R. § 1003.31(h). The regulations direct that "[i]f an application or document is not filed within the time set by the immigration judge, the opportunity to file that application or document shall be deemed waived." *Id.* Here, the immigration judge denied Rodriguez's last-minute motion for an extension because the immigration judge concluded her motion was not supported by good cause. The BIA affirmed because Rodriguez "had more than two and a half years to complete her application and failed to do so." *See Taggar*, 736 F.3d at 889 ("Neither the IJ nor the Board abused their discretion in holding that [petitioner] had waived her application for relief and protection" where she "did not file her application for relief by . . . the extended due date for her applications set by the IJ."). In considering good cause, the BIA made no distinction between Rodriguez's original motion to extend her filing deadline and her subsequent requests to reopen her removal

proceedings so she could file her otherwise untimely application.

The majority concludes that the agency erred by not adequately "assess[ing] whether Rodriguez had established good cause," on appeal, for missing the immigration judge's deadline. Maj. Op. at 14–19. In reaching this conclusion, the majority relies on a single BIA decision—*Matter of R-C-R-*, 28 I. & N. Dec. 74 (BIA 2000)—that it concludes is "persuasive in its own right." *Id.* at 16 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 161 (2012)). The BIA also relied on *Matter of R-C-R-* in concluding that Rodriguez failed to establish good cause warranting "a continuance of proceedings." I disagree that *Matter of R-C-R-* has legal or persuasive force where there is no statutory or regulatory basis for imposing a good-cause standard to excuse an untimely application in the context of seeking to *reopen* removal proceedings.

Recognizing that petitioners are generally entitled to reopen proceedings to apply for discretionary relief only where their claim for relief is based on circumstances that arose after the prior proceedings, the majority nonetheless concludes that *Matter of R-C-R-* creates an exception allowing a petitioner seeking discretionary relief to reopen proceedings to file an untimely application—based on evidence that was previously available—where the petitioner "has satisfied the additional requirement of 'provid[ing] good cause for missing the [application] deadline.'" *Id.* at 14 (citation omitted). The majority further concludes that waiver of the general limitations on motions to reopen is "eminently reasonable" in this context. *Id.* at 17.

In *Matter of R-C-R-*, the BIA stated that where the petitioner's application for relief was deemed waived after

petitioner missed the filing deadline, reopening proceedings or remanding to the immigration judge "would likely have been appropriate" had the petitioner "provided good cause for missing the deadline." 28 I. & N. Dec. at 78. This was dicta. After the immigration judge in that case deemed the petitioner's application abandoned because it was not timely filed, the BIA noted that immigration judges have authority to enforce their filing deadlines and that the petitioner was told that his application would be deemed abandoned if it was not timely filed. *Id.* at 77–78. The BIA nonetheless discussed options a petitioner may have to avoid the consequences of untimeliness, including requesting an extension of the deadline before it runs and moving for reconsideration or to reopen proceedings after the application was deemed abandoned. *Id.* at 78. But in fact, the petitioner had "made no attempt to file such a motion with a completed application at any time after the deadline had passed." *Id.* at 79.

There is no basis for concluding that *Matter of R-C-R-* created a categorical good-faith exception permitting reopening when an asylum petitioner shows good cause for missing an application deadline. The purpose of a motion to reopen is to present previously unavailable facts that are material to the petitioner's substantive claim for relief. *See* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3); *see also Meza-Vallejos v. Holder*, 669 F.3d 920, 924 (9th Cir. 2012). Neither the statute nor the regulations contemplate using these motions to avoid the consequence of missing a filing deadline.

The Supreme Court has instructed that an agency's reasonable interpretation of its own regulation controls unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997)

(citation omitted).[2] But "the possibility of deference" to an agency's interpretation arises "only if a regulation is genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414, 2418 (2019). And courts "must exhaust all the 'traditional tools' of construction" before declaring a regulation ambiguous. *Id.* at 2415 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).

Here, the *Auer* inquiry is straightforward. The regulations unambiguously define the requirements for reopening removal proceedings. Where a petitioner seeks to reopen to apply for discretionary relief, absent specified procedural irregularities, the petitioner's claim for relief must be based on "circumstances that have arisen subsequent to the [prior proceedings]." 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3). Indeed, the requirements for granting reopening so that a petitioner can apply for discretionary relief are *more limited* than they are for nondiscretionary relief, where the petitioner need only demonstrate that her new facts are material to her request for relief and were previously unavailable. Although motions to reopen originally were a judicial creation, they are now governed by regulation. *See Bonilla v. Lynch*, 840 F.3d 575, 584 (9th Cir. 2016). As such, the language of the regulation prevails, and there is no textual basis for concluding that motions to reopen, as a general matter, are a proper mechanism for overcoming a missed deadline, nor is there any basis for

---

[2] Given the terseness of the BIA's decision, it is unclear if it specifically considered whether a good-cause exception is consistent with the regulatory requirements for reopening removal proceedings such that *Auer* is triggered. For purposes of this analysis, I assume that it did.

deferring to the BIA's passing suggestion otherwise. *Kisor*, 139 S. Ct. at 2415.

The majority bypasses the *Auer* analysis and asserts that the BIA's interpretation of the relevant regulations is "persuasive in its own right" and is entitled to *Skidmore* deference. Maj. Op. at 16. *Skidmore* is less deferential than *Auer* and requires courts to "follow [the] agency's [view] only to the extent it is persuasive." *Gonzales v. Oregon*, 546 U.S. 243, 269 (2006); *see also Kisor*, 139 S. Ct. at 2414. In concluding that the statement it relies on from *Matter of R-C-R-* is persuasive, the majority reasons from cases discussing good cause for extending filing deadlines *outside the context of a motion to remand or reopen*. *See* Maj. Op. at 16–17. It is true that we have summarily—in unpublished decisions—referenced a good-cause standard when assessing the agency's denial of a filing extension. *See, e.g.*, *Cruz v. Garland*, No. 17-70090, 2022 WL 3594259, at *1 (9th Cir. Aug. 23, 2022) (unpublished) ("The agency did not abuse its discretion or violate due process by excluding untimely-filed evidence for failure to show good cause."); *Barraza v. Sessions*, 709 F. App'x 478, 479 (9th Cir. 2018) (unpublished) ("The agency did not abuse its discretion in denying Ponce Barraza's request for an additional continuance for lack of good cause, where he had been given time for preparation but did not file an asylum application prior to the IJ's deadline."); *Segura v. Lynch*, 670 F. App'x 642, 643 (9th Cir. 2016) (unpublished) ("The IJ set a reasonable filing deadline of two weeks before the merits hearing. Avina did not demonstrate good cause for his failure to meet this deadline."). But these decisions do not establish that a "good-cause standard governs the BIA's *denial of a motion to remand* when the noncitizen seeks to apply for asylum," which is what the majority does here. Maj. Op. at

14 (emphasis added). And the majority fails to identify any examples from this or any other circuit[3] recognizing a good-faith exception for missing a filing deadline as justification for a motion to remand or reopen.

Moreover, the BIA's short discussion in *Matter of R-C-R-*—much of which is dicta—is hardly the kind of reasoned analysis that is "persuasive in its own right," particularly where it is untethered from the governing text. *See Auer*, 519 U.S. at 461. Granting deference to the BIA's suggestion in *Matter of R-C-R-* that a motion to reopen or remand may be used to avoid the consequence of missing a filing deadline would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Kisor*, 139 S. Ct. at 2415 (citation omitted).

In sum, there is no basis for adopting a good-faith exception to allow petitioners seeking discretionary relief to reopen their removal proceedings after they failed to meet their application deadline. I would therefore remand for the BIA to consider whether Rodriguez's request to reopen her proceedings before the immigration judge in order to apply for asylum, withholding, and protection under CAT satisfies the governing regulatory requirements.

For these reasons, I respectfully concur in the judgment.

---

[3] The majority's reliance on the Second Circuit's opinion in *Dedji v. Mukasey*, 525 F.3d 187 (2d Cir. 2008), is misplaced. Unlike the present case, *Dedji* did not concern a motion to remand or reopen. The issue was whether the immigration court erred by failing to recognize that it had the inherent authority to deviate from its own local rules. *See id.* at 192 ("The IJ failed to consider whether, in the particular circumstances presented, a departure from the local rules was warranted.").